Daria RESSLER, Plaintiff
and Appellant,

v.

HUMANE SOCIETY OF GRAND
FORKS, a Corporation, Defendant and Appellee.

Civ. No. 910216.

Supreme Court of North Dakota.

Jan. 9, 1992.

Joel F. Arnason of Arnason Law Office, Grand Forks, for plaintiff and appellant.

Ralph F. Carter of Moosbrugger, Ohlsen, Dvorak & Carter, Grand Forks, for defendant and appellee. Appearance by Karen Lee, Law Clerk.

VANDE WALLE, Justice.

Daria Ressler appealed from a summary judgment dismissing her wrongful termination action against the Humane Society of Grand Forks. We reverse and remand.

The Humane Society hired Ressler as an at-will employee in 1989. In October 1990, the Executive Director of the Humane Society, Terri Toay, asked Ressler to evaluate a dog for signs of abuse. Ressler examined the dog and concluded that there were no obvious signs of abuse. Thereafter Ressler learned that the examination had been requested by an individual who had been criminally charged with animal abuse. On October 5, 1990, that individual subpoenaed Ressler to appear and testify at his criminal trial on October 23, 1990.

The Board of Directors of the Humane Society requested Ressler to appear at a hearing on October 18, 1990, "to explain and substantiate [her] actions relative to the alleged cruelty case now before the State's Attorney's Office" and to "state precisely what you will attest to when and if you are subpoenaed by the alleged abuser's attorney." The notice informed Ressler that "[t]he outcome of the hearing will affect the status of your employment with the Grand Forks Humane Society."

According to Ressler, after she explained her conclusion at that hearing about the alleged animal abuse, Sheila Bichler, one of the Board members, told her that "You can't go to Court and state those things" and "You'll ruin the whole States Attorney's case." In her affidavit, Bichler denied making those statements and indicated that although she told Ressler "that her

willingness to testify on behalf of an alleged dog abuser put the Grand Forks Humane Society in an awkward position," she "encouraged Ms. Ressler to comply with the subpoena and tell the truth." The minutes of the October 18 meeting provide:

"We then heard from Daria, how she had come to know ... the defendant, and his dog. We heard about the complaint made by [a] neighbor to [the defendant]. Joel asked Daria to explain what her testimony might be. She said she hadn't noticed any signs of abuse when she had the dog in her class and that she felt she was qualified to make this judgement. We learned that Sue Volkmer is the vet on this case. We each received a copy of Daria's resume. Questions were asked about her claim of being an animal behaviorist.

"Jerry suggested that Daria do her best for all concerned at the trial. Dave endorsed that and suggested that in the future, we have more dialogue when questions arise. Ralph moved that before we make a decision about Daria, we hear the other side of the issue from Terri. Sheila seconded. Motion carried. This will take place at the next Board meeting. We will not be able to do anything about a subpoena ... therefore we told Daria to consult with the State's Attorney."

Ressler subsequently obeyed the subpoena but she was not called to testify in the animal abuse case.

At a special meeting of the Board on October 24, 1990, Toay explained how Ressler had become involved in the case. According to Toay, the Board asked her about any problems she may have had with Ressler and she responded that "Ressler had been insubordinate, and harsh and rude with members of the public, and had on occasion used colorful and inappropriate language. She had been counseled on several occasions about this behavior by both me and the Shelter Manager." The minutes of the October 24 meeting reflect:

"Each of us received a copy of Daria's file from Terri. She then told us about the events leading up to the trial of [the defendant]. We heard of other instances

where she had 'clashed' with the staff and the public. Terry told how arrogant and uncooperative she had been when dealing with the Fair Board. Wayne said he felt the problem of her being insubordinate was our primary issue now that the cruelty case had been resolved. Sheila gave us several letters to read which enlightened us even more about the way Daria deals with people.

"Options mentioned: Business as usual. Try to talk to her and lay out our requirements. Redefine her job description. Probation and limited hours with a letter of reprimand. Sheila recommended we let her go. Wayne thought we should ask for her resignation. Ralph suggested we have two board members talk to her if we do that. Lucy asked for a show of hands by those in favor of asking Daria for her resignation. It was unanimous. On behalf of Dorothy, who couldn't attend the meeting, Lucy mentioned her vote for a reprimand. It was decided that Ralph and Lucy would talk to Daria on Friday the 26th."

There is no other documentation in the minutes of Toay's accusations. Nor is there any further corroboration that these accusations were significant enough to result in discharge until the episode of the subpoena arose.

On October 29, 1990, the Board of Directors gave Ressler written notification that her employment with the Humane Society had been terminated because of her "insubordinate attitude", "rude and unprofessional behavior", "decision to exceed the bounds of [her] job description without authority", and "misrepresentations made to the Board of Directors."

Ressler sued the Humane Society, alleging that her discharge was pretextual and violated public policy because she had a legal duty to obey the subpoena and to testify truthfully. The Humane Society moved for summary judgment, asserting that Ressler was an at-will employee who could be terminated without cause. Ressler admitted that she was an at-will employee; however, she asserted that her

claim was based upon a public-policy exception to the at-will doctrine. The district court concluded that Ressler was an at-will employee and granted the Humane Society's motion for summary judgment without specifically considering Ressler's assertion that her claim was based upon a public-policy exception to the at-will doctrine. Ressler moved for reconsideration. The court denied her motion, concluding that "there was no credible evidence that [Ressler] was advised not to obey a subpoena" by the Humane Society. Ressler has appealed.

Ressler argues that it is contrary to public policy for an employer to discharge an employee for honoring a subpoena and testifying truthfully. She asserts that the district court erred in granting summary judgment because there are disputed issues of material fact about whether her discharge violated that public-policy exception to the at-will doctrine.

■ We initially consider whether or not a public-policy exception to the at-will doctrine precludes an employer from discharging an at-will employee for honoring a subpoena and testifying truthfully in a judicial proceeding. It is well established in North Dakota that employment for an indefinite term is presumed to be at-will, and absent a statute to the contrary, an employer may terminate an employee without cause. Section 34–03–01, N.D.C.C.; *Eldridge v. Evangelical Lutheran Good Samaritan Society*, 417 N.W.2d 797 (N.D. 1987); *Krein v. Marian Manor Nursing Home*, 415 N.W.2d 793 (N.D.1987); *Hillesland v. Federal Land Bank Ass'n*, 407 N.W.2d 206 (N.D.1987); *Bailey v. Perkins Restaurants, Inc.*, 398 N.W.2d 120 (N.D. 1986). In *Hillesland, supra*, 407 N.W.2d at 211–212, we explained:

"The classic statement of the at-will rule is that an employer may discharge an employee 'for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong.'
. . .

"Congress and the legislatures of many states have enacted statutory provisions intended to afford some measure of protection to employees. *See, e.g.*, § 14–02.4–03, N.D.C.C. (employer may not discharge an employee because of race, color, religion, sex, national origin, age, physical or mental handicap, or status with respect to marriage or public assistance). Judicially created exceptions to or modifications of the at-will rule have also emerged to ameliorate the sometimes harsh consequences of strict adherence to the at-will rule. The two most common modifications are the public policy exception, which allows a discharged employee to recover if his termination violates a well established and important public policy, and the imposition of an implied covenant of good faith and fair dealing into the employment contract." [Citations and footnote omitted.]

In *Lee v. Walstad*, 368 N.W.2d 542 (N.D. 1985), a discharged employee urged us to adopt a public-policy exception to the at-will doctrine. In declining to adopt a public-policy exception because the employee had not defined a clear public policy which his removal violated, we quoted the Wisconsin Supreme Court's statement in *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 573, 335 N.W.2d 834, 840 (1983), that the "public policy must be evidenced by a constitutional or statutory provision." *Lee, supra*, 368 N.W.2d at 547. In *Krein v. Marian Manor Nursing Home, supra*, we held that a public-policy exception to the at-will doctrine permitted an employee to sue an employer for a wrongful discharge in retaliation for seeking workers compensation benefits. We said that public policy was expressed by the Legislature in the "sure and certain relief" for an injured worker under Section 65–01–01, N.D.C.C.[1]

---

**1.** Section 65–01–01, N.D.C.C., provides:

"*Purposes of compensation law—Police power.* The state of North Dakota, exercising its police and sovereign powers, declares that the prosperity of the state depends in a large measure upon the well-being of its wage workers, and, hence, for workers injured in hazardous employments, and for their families and dependents, sure and certain relief is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation, except as

In this case we agree with Ressler that a retaliatory discharge of an employee for honoring a subpoena and testifying truthfully would violate public policy in North Dakota. That public policy is expressed by our Legislature in our criminal statutes prohibiting the failure to obey a subpoena, the refusal to testify, and the making of a false statement.[2] Those statutes evidence a clear and compelling public policy which goes to the very heart of our judicial system.

In *Sides v. Duke University*, 74 N.C.App. 331, 328 S.E.2d 818 (1985), the North Carolina Court of Appeals held that public policy prohibited an employer from discharging an employee in retaliation for refusing to testify falsely or incompletely in a malpractice action against the employer. The court explained the public-policy considerations:

"These offenses are also an affront to the integrity of our judicial system, an impediment to the constitutional mandate of the courts to administer justice fairly, and a violation of the right that all litigants in this State have to have their cases tried upon honest evidence fully given. Indeed, as every citizen of ordinary intelligence must surely know, under our law before any witness can testify in any civil or criminal case he must solemnly affirm or swear that the evidence given by him 'shall be the truth, the whole truth, and nothing but the truth.' ... [W]e ... believe that to deny that an enforceable claim has been stated

in this instance would be a grave disservice to the public and the system of law that we are sworn to administer, no principle of which requires that civil immunity be given to those who would defile or corrupt it." *Sides, supra,* 328 S.E.2d at 823–824.

Other courts have relied upon the same compelling public-policy considerations and have held that an employer may not discharge an employee for obeying a subpoena and for testifying truthfully. *Wiskotoni v. Michigan National Bank–West,* 716 F.2d 378 (6th Cir.1983); *Ludwick v. This Minute of Carolina, Inc.,* 287 S.C. 219, 337 S.E.2d 213 (1985); *Petermann v. International Brotherhood of Teamsters,* 174 Cal. App.2d 184, 344 P.2d 25 (1959).

We conclude that the public policy of North Dakota prohibits an employer from discharging an employee for honoring a subpoena and for testifying truthfully. Having reached that conclusion, was summary judgment nevertheless proper in this case? We conclude it was not.

Summary judgment is appropriate if, after viewing the evidence in a light most favorable to the opposing party and giving that party the benefit of all favorable inferences, there is no dispute as to either the material facts or inferences to be drawn from the undisputed facts. E.g., *Eldridge v. Evangelical Lutheran Good Samaritan Society,* 417 N.W.2d 797 (N.D.1987).

The Board concedes that it was concerned with the public perception of a Hu-

---

otherwise provided in this title, and to that end, all civil actions and civil claims for relief for such personal injuries and all jurisdiction of the courts of the state over such causes are abolished except as is otherwise provided in this title."

**2.** Section 12.1–10–02(1), N.D.C.C., provides:

*"Failure to appear as witness, to produce information, or to be sworn.*
"1. A person who has been lawfully ordered to appear at a specified time and place to testify or to produce information in an official proceeding is guilty of a class A misdemeanor if, without lawful privilege, he fails to appear or to produce the information at that time and place."
Section 12.1–10–03(1)(b), N.D.C.C., provides:
*"Refusal to testify.*

"1. A person is guilty of a class A misdemeanor if, without lawful privilege, he refuses:

\* \* \* \* \* \*

"b. To answer a question in any other official proceeding and continues in such refusal after a court or judge directs or orders him to answer and advises him that his continuing refusal may make him subject to criminal prosecution."
Section 12.1–11–01(1), N.D.C.C., provides:
*"Perjury.*
"1. A person is guilty of perjury, a class C felony, if, in an official proceeding, he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a false statement previously made, when the statement is material and he does not believe it to be true."

mane Society employee appearing at a criminal trial and testifying on behalf of an individual charged with animal abuse. The Humane Society could have prevented an employee from initially examining an animal in relation to a criminal investigation. Instead, the Humane Society, through Toay, specifically asked Ressler to examine the dog and thus generated the possibility that Ressler would be subpoenaed. After Ressler examined the dog and concluded that there were no obvious signs of abuse, the Board asked her to appear at an October 18 hearing to "state precisely" what her testimony would be in the animal abuse case. The notice of hearing informed Ressler that the outcome of the hearing would affect the status of her employment. According to Ressler, at that hearing Bichler, a Board member, told her that "You can't go to Court and state those things" and "You'll ruin the whole States Attorney's case." Although Bichler denied those specific statements, summary judgment is inappropriate to resolve factual disputes involving the credibility of witnesses. *Farmers Union Oil Co. v. Harp,* 462 N.W.2d 152 (N.D.1990). This factual scenario, including the timing of the discharge, raises an inference that Ressler was discharged because she obeyed the subpoena after she had informed the Board what her testimony would have been at the criminal trial. The Humane Society's prior satisfactory employment performance appraisals of Ressler and a favorable letter of recommendation by Toay also raise an inference that the reasons for discharge were not those stated in the notification that Daria's employment was terminated but rather the subpoena episode. Viewing the evidence in the light most favorable to Ressler, there are inferences that she was discharged because she obeyed the subpoena and was prepared to testify contrary to the Humane Society's interest in the animal abuse case. We conclude that there are genuine issues of material fact about whether or not Ressler was discharged because she honored the subpoena and was willing to testify at the criminal trial. Accordingly, summary judgment was improperly granted.

We reverse the summary judgment and remand for proceedings consistent with this opinion.

ERICKSTAD, C.J., and LEVINE and MESCHKE, JJ., concur.

Justice H.F. GIERKE III, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.