2004 ND 204

**Debora HENG, Plaintiff and Appellant**

v.

**ROTECH MEDICAL CORPORATION and PSI Healthcare, Inc., d/b/a Arrowhealth Medical Supply, Defendants and Appellees.**

**No. 20040082.**

Supreme Court of North Dakota.

Nov. 2, 2004.

Patricia R. Monson (argued) and Kirsti Broeder Hourigan (appeared), Nilles, Ilvedson, Stroup, Plambeck & Selbo, Ltd., Fargo, ND, for plaintiff and appellant.

Adele Hedley Page, Page Law Firm, L.L.C., Fargo, ND, for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Debora Heng appealed from a summary judgment dismissing her retaliatory discharge and breach of contract claims against Rotech Medical Corporation and PSI Healthcare, Inc., doing business as Arrowhealth Medical Supply (hereafter collectively "Arrowhealth"), and ordering her to pay Arrowhealth's attorney's fees. We affirm in part and reverse in part, concluding the trial court correctly dismissed Heng's breach of contract claim but erred in dismissing her retaliatory discharge claim.

I

[¶ 2] Arrowhealth provides respiratory therapy and medical equipment to patients in their homes. On August 10, 2001, Heng was hired to manage Arrowhealth's Fargo office.

[¶ 3] Arrowhealth allowed its service technicians, who were not licensed healthcare specialists or respiratory therapists, to assemble oxygen delivery systems and instruct patients in their use. Arrowhealth's job description for service technicians specifically provided service technicians were to deliver and set up equipment in customers' homes and educate customers in proper use and care of the respiratory equipment. In November 2001 Heng hired a new service technician, who informed Heng that he believed Arrowhealth's practice violated North Dakota law. Heng reported this information to Arrowhealth's Regional Manager, Adam Blumenshein, who assured her that Arrowhealth's practices were in accordance with all applicable laws and regulations.

[¶ 4] On December 19, 2001, Heng met in Duluth with Blumenshein and Arrowhealth's Corporate Compliance Coordinator, Julie Johnson. Heng again expressed concern over the legality of Arrowhealth's practices, and they obtained a copy of the relevant regulation, N.D. Admin. Code § 105–03–01–02, which provides:

Home medical equipment and delivery. North Dakota Century Code chapter 43–42 prohibits the setup and instruction of medical devices related to the practice of respiratory care, gases, and equipment by a nonlicensed health care professional. The delivery and maintenance of medical devices related to the practice of respiratory care, gases, and equipment by a nonlicensed health care professional for the expressed purpose of self-care by a patient or gratuitous care by a friend or family member in the home or extended care facility is permitted.

This maintenance or delivery by the nonlicensed person does not include performing patient assessment, having direct patient contact or patient care relating to home respiratory care, or representing oneself as a certified or registered respiratory care practitioner.

Blumenshein told Heng he interpreted the regulation as allowing Arrowhealth's practices. At the Duluth meeting, Blumenshein also discussed with Heng personality conflicts and other personnel problems in the Fargo office.

[¶ 5] After returning to Fargo from the meeting, Heng anonymously contacted the North Dakota Respiratory Care Board. She was specifically told that the regulation prohibited service technicians from assembling oxygen delivery systems and instructing patients on their use. Heng read Arrowhealth's service technician job description to the Board representative, and he advised her that allowing service technicians to perform those functions would be illegal.

[¶ 6] Heng then contacted Johnson, who told her to stop having the service technicians do set ups and patient instruc-

tion for the time being. Heng claims Johnson also told her not to tell anyone else about the issue, and Johnson would contact Blumenshein for further clarification. Heng subsequently called Blumenshein, who was vacationing out of state, to further discuss the issue.

[¶ 7] On January 3, 2002, Blumenshein and Johnson met with Heng in the Fargo office. Heng claims she sought further guidance on the regulation but was given none. They also discussed ongoing personnel problems in the Fargo office, and Heng was advised that the situation would have to improve for the Fargo office to be successful. On January 18, 2002, Blumenshein fired Heng.

[¶ 8] Heng brought this action alleging retaliatory discharge, breach of contract, and intentional infliction of emotional distress. The trial court granted Arrowhealth's motions for summary judgment dismissal of Heng's retaliatory discharge and breach of contract claims, and Heng voluntarily dismissed her intentional infliction of emotional distress claim. Arrowhealth moved for an award of attorney's fees under N.D.C.C. § 34–01–20(3) as the prevailing party on the retaliatory discharge claim, and the court ordered Heng to pay $57,707.00 to Arrowhealth for its defense of the retaliatory discharge claim. Judgment was entered and Heng appealed.

## II

[¶ 9] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for promptly and expeditiously disposing of an action without a trial if either party is entitled to judgment as a matter of law and no dispute exists as to either the material facts or the reasonable inferences to be drawn from undisputed facts, or if resolving the factual disputes will not alter the result. *Investors Real Estate Trust Props., Inc. v. Terra Pacific Midwest, Inc.*, 2004 ND 167, ¶ 5, 686 N.W.2d 140; *Groleau v. Bjornson Oil Co.*, 2004 ND 55, ¶ 5, 676 N.W.2d 763. Whether summary judgment was properly granted is a question of law that we review de novo. *Investors Real Estate Trust*, at ¶ 5; *Muhammed v. Welch*, 2004 ND 46, ¶ 8, 675 N.W.2d 402. The party seeking summary judgment has the burden of showing that there is no genuine issue of material fact and that, under applicable principles of substantive law, the party is entitled to judgment as a matter of law. *Groleau*, at ¶ 5.

[¶ 10] In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion, and that party must be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *Groleau*, 2004 ND 55, ¶ 5, 676 N.W.2d 763; *Muhammed*, 2004 ND 46, ¶ 8, 674 N.W.2d 402. Even undisputed facts do not justify summary judgment if reasonable differences of opinion exist as to the inferences to be drawn from those facts. *Groleau*, at ¶ 5; *Muhammed*, at ¶ 8. If, however, reasonable persons could reach only one conclusion from the facts, issues of fact may become issues of law. *Groleau*, at ¶ 6; *Muhammed*, at ¶ 8. Summary judgment is appropriate against a party who fails to establish the existence of a genuine issue of material fact on an essential element of a claim on which she will bear the burden of proof at trial. *Investors Real Estate Trust*, 2004 ND 167, ¶ 5, 686 N.W.2d 140.

## III

[¶ 11] Heng contends the trial court erred in dismissing her breach of contract claim against Arrowhealth. Arrowhealth's employee policy manual provided for a progressive discipline procedure and prohibited retaliation against an

employee for reporting suspected violations of healthcare regulations. Heng argues that the manual created an employment contract, and that Arrowhealth breached that contract by failing to follow the progressive discipline policy and by firing her for reporting suspected violations.

[¶ 12] Employment for an indefinite term is governed by N.D.C.C. § 34-03-01:

Termination of employment at will—Notice required. An employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title.

■ [¶ 13] We outlined the application of this statute in the context of employee policy manuals in *Dahlberg v. Lutheran Soc. Servs. of North Dakota*, 2001 ND 73, ¶¶ 13-14, 625 N.W.2d 241 (citations omitted):

Under N.D.C.C. § 34-03-01, employment without a definite term is presumed to be at will, and an at-will employee may be terminated with or without cause. By contract, however, the parties may modify the at-will presumption and define their contractual rights regarding termination. An employer may contractually modify the at-will presumption with an employee handbook or personnel policy manual.

The construction of an employment contract to determine its legal effect is a question of law, and on appeal, we will independently examine and construe the contract to determine if the trial court erred in its interpretation. We construe employment contracts, including handbooks and policies, as a whole to determine the parties' intent. An explicit and conspicuous disclaimer in an employee personnel policy manual, stating no contract rights exist or the policies are not intended to create contractual rights, demonstrates the employer's intent that the manual is only a guide for the employee.

When provisions in the employee policy manual expressly state that it does not create a contract, the employee is put on clear notice that the manual preserves the presumption of employment at will. *Olson v. Souris River Telecomms. Coop., Inc.*, 1997 ND 10, ¶ 16, 558 N.W.2d 333.

[¶ 14] Arrowhealth's employee policy manual and other employment documentation explicitly and conspicuously disclaim any contract rights and repeatedly declare that employment is at will. The "Introductory Statement" to the policy manual provides in part:

Nothing in this handbook is intended to create nor should be construed as an employment contract. As always, employees can decide to end their employment with Rotech at any time; and, likewise, the Company can end such employment at any time for any reason that the Company, in its sole discretion, may deem appropriate.

There is also an entire section of the manual entitled "Employment at Will," which provides:

Although Rotech hopes that employment with the Company will be long term, either the employee or the Company may end the relationship at any time, for any reason, with or without cause, prior notice or warning. Only employees with written employment contracts should have any expectations with regard to specific employment duration. In all other cases, employment with the Company is "at-will" and may be ended at any time as stated above.

No supervisor, manager, or representative of Rotech other than the President/CEO has the authority to enter into any agreement with an individual for

employment for any specified period or to make any promises or commitments contrary to the foregoing. Further, any employment agreement entered into by the President/CEO will only be enforceable if in writing.

Therefore, this handbook neither is nor should be construed as a contract, express or implied, guaranteeing employment for any specific duration, but rather is intended to serve only as a set of guidelines.

Because the Company is a growing and changing organization, it reserves full discretion to add to, modify, or delete provisions of this handbook and the policies and procedures on which they may be based, at any time without advance notice. No oral statements or representations can change or alter the provisions of this handbook.

Nothing in this handbook will limit the employee's right or the Company's discretionary right to end employment.

In the section entitled "Separation from Employment," the manual states:

While it is the hope of the Company that employment with Rotech is productive and rewarding, it is understood that either the employee or the Company may end the employment relationship at any time, with or without cause or notice. This condition of employment is not subject to change unless in writing and signed by the employee and the President/Chief Executive Officer of Rotech....

. . . .

Rotech may end an individual's employment at any time and for any reason.

The final page of the manual, on which the employee signs to acknowledge receipt of the manual, contains this disclaimer:

I understand that the Employee Handbook is not an employment contract, but serves as a guideline. I understand that unless I have a written employment contract providing otherwise, my employment relationship with the Company is "at-will" and may be ended at any time by either me or the Company, with or without prior notice or warning, and with or without cause or reason. I understand that nothing in the handbook shall limit my right or the Company's discretionary right to end such employment. I understand that no manager, supervisor or employee of the Company, or any subsidiary of the Company, has any authority to enter into any oral agreement for employment for any specified period of time, or make any oral agreement for employment other than at-will.

[¶ 15] Finally, at the time she was hired Heng signed an "Employee Corporate Compliance Acknowledgment." Heng signed this one-page document at the bottom, and also separately initialed and dated this provision:

Neither the IHS Standards of Conduct, RoTech Code of Conduct, nor this Form:

● Create a contract for employment,

● Alter my status as an at-will employee, or

● Create a policy of progressive discipline.

[¶ 16] We conclude the employee policy manual and other employment documentation, construed as a whole, explicitly and conspicuously disclaim any employment contract and clearly evidence the parties' intent that Heng's employment was at will. The trial court did not err in granting summary judgment dismissing Heng's breach of contract claim.

IV

[¶ 17] Heng contends that she presented sufficient evidence establishing a prima

facie case for retaliatory discharge under N.D.C.C. § 34–01–20, and that the trial court therefore erred in granting summary judgment dismissing her retaliatory discharge claim against Arrowhealth.

[¶ 18] Although employment without a definite term is generally presumed to be at will, giving the employer the right to terminate an employee at any time with or without cause, there are limited exceptions to the at-will doctrine. *Anderson v. Meyer Broad. Co.*, 2001 ND 125, ¶ 28, 630 N.W.2d 46. Exceptions to the at-will doctrine may occur if an employee is terminated for complying with a clear public policy or if there is a statutory exception. *See Anderson*, at ¶¶ 28–29; *Dahlberg*, 2001 ND 73, ¶¶ 32–34, 625 N.W.2d 241.

[¶ 19] North Dakota's whistle-blower statute, N.D.C.C. § 34–01–20, provides in part:

1. An employer may not discharge, discipline, threaten discrimination, or penalize an employee regarding the employee's compensation, conditions, location, or privileges of employment because:

a. The employee, or a person acting on behalf of an employee, in good faith, reports a violation or suspected violation of federal, state, or local law, ordinance, regulation, or rule to an employer, a governmental body, or a law enforcement official.

The statute specifically authorizes an employee to bring a civil action against the employer for a violation of the statute. N.D.C.C. § 34–01–20(3). To establish a prima facie case for retaliatory discharge under the statute, the employee must show (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) the existence of a causal connection between the employee's protected activity and the employer's adverse action. *Anderson*, 2001 ND 125, ¶ 29, 630 N.W.2d 46; *Dahlberg*, 2001 ND 73, ¶ 34, 625 N.W.2d 241.

[¶ 20] Arrowhealth concedes that it took adverse action against Heng when Blumenshein fired her. Thus, to establish a prima facie case for retaliatory discharge Heng was required to present evidence from which a rational factfinder could find that she engaged in protected activity and that there was a causal connection between that activity and her termination.

### A

[¶ 21] Protected activity under N.D.C.C. § 34–01–20 includes a good faith report to the employer, a governmental body, or a law enforcement official of a violation or suspected violation of a federal, state, or local law, regulation, or rule. Arrowhealth argues Heng failed to show she engaged in protected activity under the statute because she did not report the suspected violations to the company's compliance hotline or to any outside law enforcement or regulatory agency, and because at her deposition she indicated she was concerned for the Fargo employees' jobs and careers.

[¶ 22] Both Arrowhealth and the trial court relied heavily upon Heng's failure to report the suspected violations to any outside authority to support the conclusion that she did not make the reports to her employer in good faith. Our statute, however, specifically provides that a retaliatory discharge action may be based upon an employee's report of a suspected violation to the employer. Heng repeatedly reported to her immediate supervisors her concerns that Arrowhealth's practices violated state regulations. There is no requirement under the statute that the employee also report the suspected violation to a governmental body, law enforce-

ment official, or corporate hotline. Heng's failure to report the suspected violations to outside authorities is not conclusive evidence that she lacked good faith when making her reports.

[¶ 23] Arrowhealth also contends Heng's reports were not made in good faith because they were not made for the purpose of exposing an illegality. At her deposition Heng indicated she was concerned the employees were being "hung out to dry" and any illegality might affect the future law enforcement career plans of one of the Fargo employees. We explained this aspect of the good faith requirement in *Dahlberg,* 2001 ND 73, ¶ 38, 625 N.W.2d 241:

> Section 34–01–20, N.D.C.C., was obviously intended to prohibit an employer from discharging an employee because the employee makes a good faith report to the employer of a violation or suspected violation of state law. The clear purpose of N.D.C.C. § 34–01–20 is to protect employees who expose illegalities in the workplace, and we are not persuaded N.D.C.C. § 34–01–20 was intended to protect an employee who acts for a purpose other than exposing an illegality. We construe N.D.C.C. § 34–01–20 to require a "report" to be made for the purpose of blowing the whistle to expose an illegality, and the reporter's purpose must be assessed at the time the report is made.

[¶ 24] The facts in *Dahlberg* differ greatly from this case. In *Dahlberg,* the employee complained about disparate internal discipline against employees of a residential treatment facility for troubled children and adolescents. The Court specifically noted that the employee "only incidentally implicated potential violations of state law" regarding inappropriate touching between residents. *Id.* at ¶ 40. We concluded "reasonable minds could only

conclude Dahlberg's statements . . . were made for the purpose of questioning disparate discipline of staff for incidents of inadequate supervision and not for the purpose of reporting an illegality." *Id.* at ¶ 42.

[¶ 25] By contrast, Heng's reports can hardly be characterized as "only incidentally implicat[ing] potential violations of state law." *See id.,* at ¶ 40. She repeatedly over the course of several weeks directly raised the question to her employer whether its practice of allowing service technicians to assemble oxygen delivery systems and instruct patients was in violation of regulations of the North Dakota Respiratory Care Board. After finally being told by Johnson to discontinue the practice "for the time being" after she received clarification from the Respiratory Care Board, Heng continued to request specific written guidelines on the issue. In the context and circumstances of this case, Heng's statements indicating that she was concerned about her employees could be viewed as merely an additional or secondary reason for her reports.

[¶ 26] Whether an employee has made a report in good faith is a question of fact, and summary judgment is appropriate only if, after viewing the evidence in the light most favorable to Heng, reasonable minds could only conclude that Heng's numerous reports were made solely for the purpose of protecting her employees and not for the purpose of reporting an illegality. *Id.* at ¶ 42. We conclude there is a genuine issue of material fact whether Heng made her reports in good faith for the purpose of exposing an illegality, and the trial court erred in concluding that, as a matter of law, Heng had failed to establish she had engaged in protected activity under N.D.C.C. § 34–01–20.

B

[¶ 27] Heng argues the trial court erred in finding there was no causal

connection between her protected activity and her termination. She contends there is circumstantial evidence to support a finding that she was fired because she reported the suspected violations to Blumenshein and pressed the issue after Blumenshein insisted Arrowhealth's practices were legal.

[¶ 28] Causation requires a claimant to show more than the mere fact she reported violations and was subsequently fired. *Anderson*, 2001 ND 125, ¶ 35, 630 N.W.2d 46. Although there must be something more than pure speculation or conjecture, circumstantial evidence may provide an inference of causation. *Id.* Proximity in time between the protected activity and the adverse employment action is "particularly significant." *Id.*; *see also Ressler v. Humane Soc'y of Grand Forks*, 480 N.W.2d 429, 433 (N.D.1992). The fact that the employee's complaints were directed toward or involved the person who ultimately fired her may also provide an inference that the adverse action was related to the protected activity. *Id.* at ¶ 36.

[¶ 29] In this case, a fact-finder could infer Heng's firing was reasonably proximate to her reports of suspected violations. Heng initially advised Blumenshein of suspected violations in late November and late December 2001. After Johnson told Heng in late December to have only respiratory therapists do the set ups and patient instruction "for the time being," Heng repeatedly requested written direction on the protocol for set ups and patient instruction. In its memorandum opinion granting summary judgment on the retaliatory discharge claim, the trial court noted Heng was fired "the very same day she made her last telephonic report." There was evidence tending to prove reasonable proximity in time between Heng's protected activity and her termination.

[¶ 30] An inference of causation may also be drawn if the person who ultimately fires the employee was involved in the reported activity. *Anderson*, 2001 ND 125, ¶ 36, 630 N.W.2d 46. Although Heng did not complain directly about Blumenshein, her reports in this case expressly questioned his stated position that Arrowhealth's practices did not violate the regulations. Despite being told twice by Blumenshein that the regulation did not prohibit Arrowhealth's practice of having service technicians perform set ups and patient instruction, Heng persisted and contacted the North Dakota Respiratory Care Board. After learning that the Board considered Arrowhealth's practice illegal, Heng contacted Johnson and Arrowhealth changed their practice "for the time being." Heng continued to press for definitive guidelines on the issue until she was fired. Heng's continued questioning of Blumenshein's interpretation of the regulation supports an inference that Blumenshein fired her because of the protected activity.

[¶ 31] There are other factors which might lead to an inference that Heng was fired for her protected activity, and not for disciplinary and personnel problems as alleged by Arrowhealth. When Blumenshein and Johnson met with Heng on January 3, 2002, they reportedly advised Heng that the situation in the Fargo office would have to improve. Arrowhealth has not drawn our attention to any evidence showing that Blumenshein made any attempt to learn whether conditions in the Fargo office had improved before firing Heng two weeks later on January 18, 2002. In addition, Blumenshein admittedly did not follow Arrowhealth's progressive discipline policy in disciplining and ultimately firing Heng. Blumenshein conceded that he did

not contemporaneously document the disciplinary meetings he allegedly had with Heng. When asked at his deposition whether any lawyer had subsequently told him to document what had happened at the Duluth meeting, Blumenshein candidly admitted:

> A. Okay. I think the corporate office when we first got wind of this said, "Do you have documentation?" I said, "No." "Well, you need to make documentation."

[¶ 32] All of these factors, when considered together, are sufficient to create a genuine issue of material fact on causation.

[¶ 33] The trial court expressly found that the close proximity in time between Heng's reports and her termination, and Blumenshein's participation in her firing, were "strong causal connectors." The court went on, however, to conclude that these "strong" factors were "outweighed" by evidence of the problems in Heng's performance as manager of the Fargo office. The court then stated it "cannot find a causal connection between Heng's activity and [Arrowhealth's] adverse action."

[¶ 34] On a motion for summary judgment the trial court's role is limited to determining whether the evidence and inferences to be drawn therefrom, when viewed in the light most favorable to the party opposing summary judgment, demonstrate that there are no genuine issues of material fact. *See Groleau v. Bjornson Oil Co.*, 2004 ND 55, ¶ 5, 676 N.W.2d 763. It is inappropriate on a motion for summary judgment for the trial court to weigh the evidence, determine credibility, or attempt to discern the truth of the matter. *Schaefer v. Souris River Telecomms. Cooperative*, 2000 ND 187,

¶ 8, 618 N.W.2d 175; *Opp v. Source One Mgmt., Inc.*, 1999 ND 52, ¶ 16, 591 N.W.2d 101. Nor may the court draw inferences from the evidence or make findings on disputed facts. *Campbell Farms v. Wald*, 1998 ND 85, ¶ 11, 578 N.W.2d 96; *Greenfield v. Thill*, 521 N.W.2d 87, 92 (N.D.1994). Once the trial court concluded that there were "strong factors" and "strong causal connectors" showing a causal connection between Heng's protected activity and Arrowhealth's adverse action, its inquiry should have been over. If there was evidence from which a factfinder could reasonably draw an inference of causation, Heng had established a prima facie case and the task of weighing that evidence, assessing credibility, and making findings was for the factfinder after a full trial.

### C

[¶ 35] Arrowhealth contends that, even if Heng has established a prima facie case of retaliatory discharge under N.D.C.C. § 34–01–20, Arrowhealth has "carried its burden" of demonstrating a legitimate, nonretaliatory reason for firing Heng.

[¶ 36] Arrowhealth's argument is premised upon the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as modified by our prior caselaw: [1]

> [U]nder our modification of the McDonnell Douglas/Burdine framework . . . the plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. Establishment of the prima facie case creates a presumption that the employer unlawfully discriminated against the

---

1. The parties apparently agreed, and therefore we will assume for purposes of reviewing the summary judgment, that the *McDonnell* *Douglas* rule applies to a retaliatory discharge claim under N.D.C.C. § 34–01–20. *See Dahlberg*, 2001 ND 73, ¶ 31 n. 3, 625 N.W.2d 241.

plaintiff. If the plaintiff meets his or her burden of persuasion, and succeeds in establishing the presumption, then, under Rule 301, NDREvid, the burden of persuasion shifts to the employer to rebut the presumption of discrimination by proving by a preponderance of the evidence that its action was motivated by one or more legitimate, nondiscriminatory reasons. If the employer fails to persuade the trier of fact that the challenged action was motivated by legitimate, nondiscriminatory reasons, the plaintiff prevails. If, however, the employer persuades the fact finder that its reasons were nondiscriminatory, the employer prevails.

*Engel v. Montana Dakota Utils.*, 1999 ND 111, ¶ 8, 595 N.W.2d 319 (quoting *Zimmerman v. Minot Pub. Sch. Dist. No. 1*, 1998 ND 14, ¶ 10, 574 N.W.2d 797, and *Schweigert v. Provident Life Ins. Co.*, 503 N.W.2d 225, 229 (N.D.1993)).

■■■ [¶ 37] Arrowhealth argues that, even if Heng established a prima facie case of retaliatory discharge, it carried its burden of showing it had a legitimate, nonretaliatory reason for terminating Heng's employment. The burden-shifting rule of *McDonnell Douglas,* however, has little or no application at the summary judgment stage. The rule explicitly governs the burden of persuasion at trial and creates a presumption of wrongful employment activity if the employee presents a prima facie case. The ultimate question for the factfinder is whether the employer's adverse action was motivated by a legitimate reason or an unlawful reason. *See Engel,* 1999 ND 111, ¶ 8, 595 N.W.2d 319; *Schweigert,* 503 N.W.2d at 229. By presenting a prima facie case of retaliatory discharge, the employee has created a genuine issue of material fact on the question of why she was fired, and the employer's

alleged nonretaliatory reasons for the termination merely go to that question of fact. Accordingly, if the employee has presented a prima facie case by presenting evidence from which the factfinder could find she engaged in protected activity, the employer took adverse action, and there was a causal connection between the activity and the adverse action, the employer's presentation of evidence of a legitimate, nonretaliatory reason for its action merely creates an issue of fact, not a basis for summary judgment dismissal of the employee's claim.

### D

[¶ 38] We conclude the trial court erred in granting summary judgment dismissing Heng's retaliatory discharge claim.

### V

[¶ 39] We have considered the remaining issues and arguments raised by the parties and they are either unnecessary to our decision or are without merit. We affirm that part of the judgment dismissing Heng's breach of contract claim. We reverse that part of the judgment dismissing Heng's retaliatory discharge claim and the award of attorney's fees based on that claim, and remand for further proceedings.

[¶ 40] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.