2015 ND 275

**Lori YAHNA, Plaintiff and Appellant**

v.

**ALTRU HEALTH SYSTEM,**
**Defendant and Appellee.**

No. 20150083.

Supreme Court of North Dakota.

Dec. 1, 2015.

Peter W. Zuger (argued) and Ronald H. McLean (on brief), Fargo, N.D., for plaintiff and appellant.

Zachary E. Pelham (argued) and Rachel A. Bruner–Kaufman (on brief), Bismarck, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1]   Lori Yahna appealed from a summary judgment dismissing her complaint

against Altru Health System for age discrimination and for wrongful termination of employment. She asserts there are disputed issues of material fact on her claims that her termination constituted age discrimination and violated Altru's employment policies and procedures. We affirm.

I

[¶ 2] In 1984, Yahna began working for the Grand Forks Clinic, the predecessor to Altru, as a licensed practical nurse. She received additional training in vascular technology to work with Dr. Rolf Paulson in the ultrasound department and by 1986 she was working solely as a vascular technologist. According to Yahna, she was the technical director of the vascular lab, she developed the vascular medicine practice at Altru with Dr. Paulson, she trained other ultrasound technologists to work in the vascular lab, and she helped with quality assurance and became the supervisor of the ultrasound department in 1997. She initially worked full time as a vascular technologist with on-call responsibilities, but she received approval to work three days per week in 2001 with no on-call responsibility. According to Yahna, she became coordinator and technical director of the vascular lab in 2006. In February 2012, Altru created a new position for an education and quality assurance coordinator, and hired Derek Todd for that full-time position. According to Yahna, she did not apply for that position because it was full time. She claimed, however, she maintained her position as technical director of the vascular lab and understood she would still be doing quality assurance and reviewing other technologists' films. Yahna claimed Altru required her to work full time with on-call responsibilities in July 2012, and she was terminated on July 2, 2012, after she informed Altru "she would not be able to take call at this time."

Yahna was forty-eight years old when she was terminated.

[¶ 3] In October 2012, Yahna sued Altru, alleging it wrongfully terminated her employment on July 2, 2012, in violation of its written policies and procedures and in violation of statutory provisions prohibiting age discrimination under the North Dakota Human Rights Act, N.D.C.C. ch. 14–02.4.

[¶ 4] Altru answered, alleging Yahna was an at-will employee and was terminated for the legitimate non-discriminatory reason of refusing to take required on-call responsibilities. According to Altru, in May and June 2012 it expanded and restructured its ultrasound department into separate departments for vascular and general ultrasound and Laurie Mahin became the full-time supervisor of both departments. According to Mahin, supervisors and the education and quality assurance coordinator were exempt from taking call and Yahna was not required to take call until 2012, when her job title changed and she went from supervisor and quality assurance coordinator to technologist. Altru claimed that after the ultrasound department split into separate departments, all general and vascular ultrasound technologists were required to take on-call responsibilities. According to Altru, Yahna did not have a managerial, supervisory, or coordinator position when she was terminated and she was terminated from her job as a vascular technologist because she refused to take required on-call responsibilities.

[¶ 5] The district court granted Altru's motion for summary judgment, concluding there were no disputed issues of material fact that Altru's employment policies and procedures did not abrogate Yahna's at-will employment status with Altru and that her termination did not constitute age discrimination. The court explained the

provisions in Altru's employment policy manual unambiguously preserved the presumption of at-will employment and did not evidence an intent that the ·manual created a contractual right to employment. In rejecting Yahna's age discrimination claim, the court cited the requirements for a prima facie age discrimination claim and said that because Yahna refused to take required on-call ·responsibilities for an ultrasound technologist she failed to· satisfactorily perform the duties of her position and she failed to establish employees outside her protected age class were treated more favorably than her. The court ruled Altru established it terminated Yahna because she refused to take on-call responsibilities for her job and granted summary judgment dismissing her complaint.

## II

■■ [¶ 6] Our standard of review of summary judgment is well-established:

"Summary judgment ... is 'a procedural device for promptly resolving a controversy on the merits without a trial if [there are no genuine issues of] material facts or the inferences to be drawn from the undisputed facts, or if resolving disputed facts would not alter the result.' " " 'In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit· of all favorable inferences which can reasonably be drawn from the record.' " " 'Whether summary judgment was properly granted is a question of law that this Court reviews de novo on the entire record.' "

"A party resisting a [properly supported] motion for summary judgment may not simply rely upon the pleadings or upon unsupported, conclusory allegations," but "must set forth specific facts by presenting competent, admissible evidence, whether by affidavit or by directing the court to relevant evidence in the record, demonstrating a genuine issue of material fact." " '[T]he court has no duty to scour the record for evidence that would preclude summary judgment.' " The party opposing the motion has the responsibility to draw " 'the court's attention, to evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising a material factual issue or from which the court may draw an inference creating a material factual issue.' " The party opposing summary judgment " 'must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.' "

*Spratt v. MDU Res. Grp., Inc.*, 2011 ND 94, ¶¶ 6–7, 797 N.W.2d 328 (citations omitted).

[¶ 7] We have recognized that "[m]ere speculation is not enough to defeat a motion for summary judgment," and "[i]f no pertinent evidence on an essential element is presented to the trial court in resistance to a motion for summary judgment, it is presumed that no such evidence exists." *Investors Real Estate Trust Props., Inc. v. Terra Pac. Midwest, Inc.*, 2004 ND 167, ¶ 5, 686 N.W.2d 140.

## III

■ [¶ 8] North Dakota law presumes at-will employment under the provisions of N.D.C.C. § 34–03–01 that "employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title." *Hunt v. Banner Health Sys.*, 2006 ND 174, ¶ 9, 720 N.W.2d 49.

This Court has recognized the statutory presumption for at-will employment may be modified by an employment handbook creating contractual rights to employment, or by the statutory proscription against unlawful age discrimination in the North Dakota Human Rights Act, N.D.C.C. ch. 14–02.4. *See Spratt,* 2011 ND 94, ¶¶ 9–19, 797 N.W.2d 328 (analyzing age discrimination claim under Human Rights Act); *Hunt,* at ¶¶ 9–17 (analyzing effect of employee handbook on at-will employment presumption).

## A

[¶ 9] Yahna argues there are disputed issues of material fact regarding her age discrimination claim because she is a member of a protected class over the age of forty, she satisfactorily performed her job duties, and others not in her protected age class were treated more favorably than her.

[¶ 10] Under the Human Rights Act, it is unlawful to discharge an employee because of age, and "age" is defined as "at least forty years of age." *Spratt,* 2011 ND 94, ¶ 9, 797 N.W.2d 328 (quoting N.D.C.C. §§ 14–02.4–02(1) and 14–02.4–03). "The Human Rights Act authorizes a person claiming to be aggrieved by an unlawful discriminatory practice to bring an action for damages in the district court." *Spratt,* at ¶ 9; *see* N.D.C.C. § 14–02.4–19(2). "In analyzing discrimination claims under the Human Rights Act, this Court has adopted a modified version of the federal *McDonnell Douglas* formula, which creates a presumption and a shifting burden of proof." *Spratt,* at ¶ 10. *See generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[¶ 11] This Court has explained the application of the modified formula:

"'[U]nder our modification of the *McDonnell Douglas/Burdine* frame-work ... the plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. Establishment of the prima facie case creates a presumption that the employer unlawfully discriminated against the plaintiff. If the plaintiff meets his or her burden of persuasion, and succeeds in establishing the presumption, then, under Rule 301, NDREvid, the burden of persuasion shifts to the employer to rebut the presumption of discrimination by proving by a preponderance of the evidence that its action was motivated by one or more legitimate, nondiscriminatory reasons. If the employer fails to persuade the trier of fact that the challenged action was motivated by legitimate, nondiscriminatory reasons, the plaintiff prevails. If, however, the employer persuades the fact finder that its reasons were nondiscriminatory, the employer prevails.' "

. . . .

The modified *McDonnell Douglas* formula only applies, however, when the plaintiff is relying upon indirect evidence, and the resulting evidentiary presumption, to establish unlawful discrimination. The purpose of the modified *McDonnell Douglas* test is to assure that the " 'plaintiff [has] his day in court despite the unavailability of direct evidence.' " If the plaintiff presents explicit, direct evidence of discrimination—the proverbial "smoking gun" of discrimination—there is no need to employ the presumption available under the modified *McDonnell Douglas* test. Therefore, " '[t]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.' "

*Spratt,* 2011 ND 94, ¶¶ 10–11, 797 N.W.2d 328 (citations omitted).

[¶ 12] Yahna does not rely on direct evidence of age discrimination; rather, she argues she raised genuine issues of material fact to establish a prima facie case of age discrimination under this Court's modified burden shifting rule from *McDonnell Douglas*. The burden of establishing a prima facie case of discrimination is not onerous. *Jacob v. Nodak Mut. Ins. Co.*, 2005 ND 56, ¶ 13, 693 N.W.2d 604. If the plaintiff fails to establish a prima facie case, however, the burden-shifting rule of *McDonnell Douglas* is not applicable. *Clausnitzer v. Tesoro Ref. & Mktg. Co.*, 2012 ND 172, ¶ 8, 820 N.W.2d 665.

> "To establish a prima facie case of discrimination under the North Dakota Human Rights Act, a plaintiff must prove: (1) membership in a protected class under the Act; (2) satisfactory performance of the duties of the position; (3) an adverse employment decision; and (4) others not in the protected class were treated more favorably."

*Spratt*, 2011 ND 94, ¶ 16, 797 N.W.2d 328 (quoting *Jacob*, at ¶ 13).

[¶ 13] It is undisputed that Yahna's termination is an adverse employment decision and that she is more than forty years old and is a member of a protected class. *See* N.D.C.C. § 14–02.4–02(1) (defining age as it refers to any prohibited employment practice to mean at least forty years of age). Membership in a protected class over the age of forty, however, without other evidence is insufficient to survive a motion for summary judgment on an age discrimination claim. *Spratt*, 2011 ND 94, ¶ 18, 797 N.W.2d 328; *Jacob*, 2005 ND 56, ¶ 14, 693 N.W.2d 604. The Human Rights Act does not prohibit employers from terminating employees more than forty years old, it prohibits employers from discharging employees over the age of forty because of their age. *Spratt*, at ¶ 18; *Jacob*, at ¶ 14.

[¶ 14] Yahna argues her job at Altru did not require her to be available for on-call responsibilities and she satisfactorily performed the duties of her job. She contends she became the supervisor of the ultrasound department in 1997 and she became the coordinator and technical director of the vascular lab in 2006. She asserts she remained the technical director of the lab and had quality assurance responsibilities and reviewed other technologists' films at the time she was terminated. She argues there are genuine issues of material fact about whether she satisfactorily performed her job duties by not taking on-call responsibilities because another younger employee with quality assurance responsibilities, Todd, did not have to take on-call duties. Moreover, she claims she never refused to take on-call duties at any time; rather, she argues she informed Altru she would not be able to take on-call responsibilities "at that time." She argues younger employees were treated more favorably because her education coordinator job was given to a younger person, Todd, who was not required to take on-call responsibilities.

[¶ 15] Altru responds that Yahna was an ultrasound technologist and because of its department reorganization, she was no longer a supervisor, coordinator, or manager and was required to take on-call responsibilities like all ultrasound technologists. Altru argues Yahna's refusal to take on-call responsibilities was the reason she was terminated and is not evidence of age discrimination.

[¶ 16] It is undisputed that in May and June 2012 Altru restructured its ultrasound department into separate vascular and general ultrasound departments, that Laurie Mahin, an employee more than forty years old, became the full-time supervi-

sor for both ultrasound departments, and that Altru hired Todd, an employer less than forty years old, to be the full-time education and quality assurance coordinator in February 2012. It is also undisputed that Altru did not require Mahin, Todd, or other supervisors to take on-call responsibilities.

[¶ 17] Yahna claims she retained supervisory and quality assurance responsibilities after the restructuring and when she was terminated and she was not required to take on-call responsibilities. She thus claims there are disputed issues of material fact about whether she satisfactorily performed her job duties and whether other persons not in the protected class were treated more favorably than her.

[¶ 18] We have recognized that although the burden of establishing a prima facie case of disparate treatment is not onerous, age discrimination claims are not a vehicle for reviewing the propriety of business decisions. *Jacob*, 2005 ND 56, ¶ 13, 693 N.W.2d 604. Here, Altru made a business decision to restructure its ultrasound department, and Yahna cannot directly challenge the propriety of that decision. Rather, she claims she retained supervisory and quality assurance responsibilities under the restructured ultrasound departments.

[¶ 19] Altru provided evidence in support of its summary judgment motion that Yahna was a vascular ultrasound technologist and was required to take on-call responsibilities because she was not a supervisor or manager. Although Yahna claims she retained her supervisor and quality assurance responsibilities after Altru restructured the ultrasound department and when she was terminated, her argument ignores the effect of Altru's restructured ultrasound departments. We decline to construe the Human Rights Act to preclude an entity from restructuring its business and altering employee job responsibilities. Yahna's conclusory assertions about her understanding or belief regarding her job responsibilities after the restructuring do not raise a disputed factual issue that she refused to perform the on-call requirements for a vascular technologist at the time she was terminated. Yahna's speculation about her job position is not sufficient to defeat Altru's motion for summary judgment and she has not provided competent evidence to raise a factual issue that she was not a vascular technologist when she was terminated and that she was treated differently than other vascular technologists in Altru's restructured ultrasound department. Viewing the evidence in the light most favorable to Yahna, the evidence does not raise an inference that she was discharged because of her age; rather, she was terminated because she refused to be available for on-call responsibilities required for vascular technologists after Altru restructured the ultrasound department.

[¶ 20] Yahna also claims she was treated differently than Todd. However, Todd was hired as a full-time education and quality assurance coordinator in February 2012. Yahna did not apply for that full-time position, and she does not specifically claim Altru's decision to hire Todd for that position constituted age discrimination. *See Koehler v. County of Grand Forks*, 2003 ND 44, ¶ 17, 658 N.W.2d 741 (to establish prima facie case of discrimination in failure to promote case, party must ordinarily apply for position at issue). After the reorganization, Yahna's job responsibilities were as a vascular technologist and Altru required technologists, regardless of age, to take on-call responsibilities. Yahna's argument about not being available for call "at that time" ignores Altru's job requirements for technologists to be

available for call on July 2, 2012, when she was terminated.

[¶ 21] Viewing the evidence in the light most favorable to Yahna, we conclude she has not raised a disputed issue of material fact on her age discrimination claim.

### B

[¶ 22] Yahna argues there are disputed issues of material fact about whether her termination violated Altru's written employment policies and procedures. She argues those employment policies and procedures are ambiguous and created a contractual relationship that abrogated her at-will employment relationship with Altru. She also claims there are questions of fact about whether Altru followed its grievance process when she orally expressed a grievance immediately before she was terminated. Altru responds its employment policies and procedures, when read as a whole, are not ambiguous and do not create a contractual relationship that abrogated its at-will relationship with Yahna.

[¶ 23] This Court has recognized that an employee handbook may modify the statutory presumption of at-will employment under N.D.C.C. § 34–03–01. *Hunt*, 2006 ND 174, ¶¶ 9–17, 720 N.W.2d 49; *Heng v. Rotech Med. Corp.*, 2004 ND 204, ¶ 13, 688 N.W.2d 389; *Dahlberg v. Lutheran Soc. Servs.*, 2001 ND 73, ¶¶ 13–14, 625 N.W.2d 241; *Olson v. Souris River Telecomms. Coop., Inc.*, 1997 ND 10, ¶¶ 16–18, 558 N.W.2d 333; *Bykonen v. United Hosp.*, 479 N.W.2d 140, 141–42 (N.D.1992).

[¶ 24] In *Hunt*, 2006 ND 174, ¶¶ 10–17, 720 N.W.2d 49, we explained that employee handbooks and policies must be read and construed as a whole to determine whether the parties intended the handbook to create contractual rights overcoming the at-will employment presumption. We said the presence of a clear, conspicuous, and unambiguous disclaimer may act as an "escape hatch," undoing other implied promises made in the handbook. *Id.* at ¶ 12. We explained:

If, upon consideration of the document as a whole, the handbook or policy manual does not evidence an intent to contract to overcome the at-will presumption, the absence of a clear and conspicuous disclaimer is not controlling. The presence of a disclaimer acts as a factor in an examination of the intent of the document as a whole. The court still is required to examine the document to determine the intent of the parties. When the disclaimer clearly, conspicuously, and unambiguously preserves the at-will presumption and no other evidence overcomes the at-will presumption, the disclaimer will be controlling.

*Id.* at ¶ 16.

[¶ 25] In *Hunt*, 2006 ND 174, ¶ 3, 720 N.W.2d 49, an employee handbook stated that "Nothing contained herein shall be construed as a guarantee of continued employment. Banner does not guarantee continued employment to employees and reserves the right to terminate or lay off employees." The handbook also included policies for progressive discipline and a provision describing the difference between at-will and permanent employees. *Id.* The employee was terminated without any indication the employer followed the progressive disciplinary procedures. *Id.* at ¶ 4. We held the employer's policies and procedures could not be read to establish, as a matter of law, that the parties intended to overcome the statutory presumption of at-will employment. *Id.* at ¶ 17. We said the disclaimer only conveyed that employment was not guaranteed and did not indicate whether employment was contractual or at-will. *Id.* We concluded ambiguities in the handbook created a question of

fact about whether the handbook was intended by the parties to establish required terms of the employment relationship, and we reversed a summary judgment dismissing the employee's claim for wrongful termination. *Id.* at ¶ 18.

[¶ 26] Altru's policy for disciplinary process provides, in part:

While this policy provides an option for addressing substandard work performance, it does not restrict Altru Health System's "At Will" employment rights, nor create any contract of employment. The employer retains the right to terminate employees for any reason, at any time, without utilizing a disciplinary process. Management reserves the right to bypass and/or repeat steps of the Disciplinary Process at their discretion, depending upon the severity of the situation. Such variations from the established procedure should be discussed with the Employee Relations Manager prior to carrying out the action.

. . . .

*Immediate Termination of Employment:*

Acts of misconduct that include, but are not limited to: interaction with patients or family members that demonstrates non-compassionate behavior such as being abrasive, rude, disrespectful, offensive, etc.; "walking off the job," insubordination; breach of confidentiality, physical or verbal abuse of a patient, workplace violence, sexual harassment, theft, or violation of Altru Health System's Code of Conduct or criminal behavior could result in immediate termination of employment.

Employees may resign their employment at any time and for any reason, and Altru Health System reserves the same right regarding the termination of an individual's employment.

Steps of the Disciplinary Process may be bypassed or repeated depending on the circumstances involved.

This record also includes Altru's separate policies and procedures for an ethics code, a grievance process, and conflict resolution.

[¶ 27] We conclude Altru's policies, when read as a whole, unambiguously indicate Altru has preserved the at-will employment status of its employees and has not abrogated the at-will presumption. The plain language of Altru's policy for disciplinary process states "this policy provides an option for addressing substandard work performance" and "it does not restrict" Altru's at-will employment rights, nor create any employment contract. Under that policy, the employer retains the right to terminate employees for any reason without using the disciplinary process and management may bypass or repeat the disciplinary process at its discretion. Moreover, the disciplinary process explicitly says some acts of misconduct, including insubordination, can result in immediate termination. Unlike the policy language at issue in *Hunt*, Altru's disciplinary policy specifically states "it does not restrict Altru's Health System's 'At Will' employment rights, nor create any contract of employment" and preserves Altru's at-will employment rights. *See Hunt*, 2006 ND 174, ¶ 3, 720 N.W.2d 49 (quoting policy language stating "Nothing contained herein shall be construed as a guarantee of continued employment. Banner does not guarantee continued employment to employees and reserves the right to terminate or lay off employees."). Moreover, the presence of policies for ethical conduct by employees and for grievances, when read with the policy for disciplinary process, does not override the explicit language in Altru's disciplinary policy that "it does not restrict" Altru's " 'At Will' employment

rights, nor create any contract of employment." We conclude Altru's policies, when read together, are not ambiguous and do not create a contractual relationship overcoming the at-will employment doctrine.

IV

[¶ 28] We affirm the summary judgment.

[¶ 29] CAROL RONNING KAPSNER, LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.