# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

2021 ND 2

Brandon Potts,                                              Plaintiff and Appellant

v.

City of Devils Lake and Devils Lake

Police Department,                                         Defendants and Appellees

No. 20200144

Appeal from the District Court of Ramsey County, Northeast Judicial District, the Honorable Anthony Swain Benson, Judge.

AFFIRMED.

Opinion of the Court, by Crothers, Justice, in which Justices VandeWalle and McEvers joined. Justice Tufte filed an opinion concurring in the result, in which Chief Justice Jensen joined.

Leo F. J. Wilking, Fargo, ND, for plaintiff and appellant.

Scott K. Porsborg (argued) and Austin T. Lafferty (appeared), Bismarck, ND, for defendants and appellees.

Mark A. Friese, Fargo, ND, for Amicus Curiae North Dakota Fraternal Order of Police.

**Potts v. City of Devils Lake, et al.**
**No. 20200144**

**Crothers, Justice.**

[¶1] Brandon Potts appeals after the district court granted summary judgment to the City of Devils Lake and the Devils Lake Police Department (collectively, "Devils Lake") dismissing his claim for wrongful termination. Potts argues the court erred in holding under North Dakota law that no exception to the employment-at-will doctrine exists for law enforcement officers who act in self-defense. We affirm.

I

[¶2] Potts was hired as a patrol officer in the Devils Lake Police Department in May 2008 and was promoted to detective in March 2013. In February 2019, he was terminated after a July 2018 incident where, while attempting to arrest a suspect, Potts's service weapon discharged, striking the suspect in the head, and resulting in his death.

[¶3] In August 2019, Potts sued Devils Lake for wrongful termination, alleging his termination was against public policy. In September 2019, Devils Lake answered the complaint, denied any wrongful termination and asserted various affirmative defenses. The parties initially filed a stipulation of facts with a joint motion for certification of question of law by the district court. The parties ultimately converted their joint motion to cross-motions for summary judgment.

[¶4] After a hearing in March 2020, the district court issued an April 2020 memorandum opinion and order granting summary judgment in favor of Devils Lake. The court concluded that no clear and compelling public policy exists in favor of an exception to the employment-at-will doctrine in North Dakota for law enforcement officers who act in self-defense.

II

[¶5] "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of

material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law." *McCormick, Inc. v. Fredericks*, 2020 ND 161, ¶ 29, 946 N.W.2d 728 (quoting *Krebsbach v. Trinity Hosps., Inc.*, 2020 ND 24, ¶ 7, 938 N.W.2d 133). On appeal this Court views the evidence in the light most favorable to the party opposing the motion. *Id.* Whether the district court properly granted summary judgment is a question of law, which this Court reviews de novo on the entire record. *Id.*

III

[¶6]   The sole issue on appeal is whether the district court erred as a matter of law in holding there is no public policy exception from the employment-at-will doctrine for law enforcement officers who act in self-defense.

[¶7]   North Dakota law presumes at-will employment under N.D.C.C. § 34-03-01, providing that "employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title." *Yahna v. Altru Health Sys.,* 2015 ND 275, ¶ 8, 871 N.W.2d 580. Under N.D.C.C. § 34-03-01, employment without a definite term is presumed to be at will, giving an employer the right to terminate an at-will employee with or without cause. *See Dahlberg v. Lutheran Soc. Servs. of N.D.*, 2001 ND 73, ¶ 13, 625 N.W.2d 241; *Jose v. Norwest Bank*, 1999 ND 175, ¶¶ 10, 17, 599 N.W.2d 293. This Court, however, has recognized certain exceptions to this presumption.

[¶8]   For example, "[t]his Court has recognized the statutory presumption for at-will employment may be modified by an employment handbook creating contractual rights to employment, or by the statutory proscription against unlawful age discrimination in the North Dakota Human Rights Act, N.D.C.C. ch. 14-02.4." *Yahna*, 2015 ND 275, ¶ 8 (citing *Spratt v. MDU Res. Grp., Inc.*, 2011 ND 94, ¶¶ 9-19, 797 N.W.2d 328 (analyzing age discrimination claim under Human Rights Act)); *Hunt v. Banner Health Sys.*, 2006 ND 174, ¶¶ 9-17, 720 N.W.2d 49 (analyzing effect of employee handbook on at-will employment presumption). This Court has also recognized limited public policy exceptions to the at-will employment doctrine:

> "Although at-will employees generally may be discharged at any time for any reason, we have recognized limited, public policy exceptions to the at-will presumption if employees establish they were terminated in retaliation for complying with a clear public policy. *See Ressler v. Humane Soc.*, 480 N.W.2d 429, 432 (N.D. 1992) (holding public policy prohibited employer from discharging employee in retaliation for honoring subpoena and informing employer she was prepared to testify contrary to employer's interest in criminal proceeding); *Krein v. Marian Manor Nursing Home*, 415 N.W.2d 793, 795 (N.D. 1987) (holding public policy prohibited employer from discharging employee in retaliation for seeking workers compensation benefits). *Compare Jose*, 1999 ND 175, ¶ 21, 599 N.W.2d 293 (holding employees identified no clear public policy which their termination violated); *Lee v. Walstad*, 368 N.W.2d 542, 547 (N.D. 1985) (same)."

*Dahlberg*, 2001 ND 73, ¶ 32.

[¶9]   Potts acknowledges that this Court has never addressed whether self-defense is a public policy exception to the at-will employment doctrine. He nevertheless asserts this Court should adopt the rationale set forth by other courts. *See, e.g.*, *Ray v. Wal-Mart Stores, Inc.*, 359 P.3d 614, 619 (Utah 2015) (holding "that Utah law reflects a policy favoring the right of self-defense, and that policy is of sufficient magnitude to qualify as a substantial public policy exception to the at-will employment doctrine, but only under the narrow circumstances where an employee cannot withdraw and faces imminent serious bodily injury"), and *Feliciano v. 7-Eleven, Inc.*, 559 S.E.2d 713, 724 (W.Va. 2001) (holding the "right of self-defense in response to lethal imminent danger is a substantial public policy exception to the at will employment doctrine and will support a cause of action for wrongful discharge[; however,] [a]n aggrieved employer may then rebut the presumption of a wrongful discharge by demonstrating that it had a plausible and legitimate business reason for terminating its employee").

[¶10] Potts contends North Dakota's constitution and statutes provide sufficiently clear public policy to support an exception to the at-will employment doctrine under N.D.C.C. § 34-03-01. In support of his argument for a public policy exception, Potts relies on N.D. Const. art. I, § 1 ("All

individuals are by nature equally free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty . . . ."); N.D.C.C. § 12.1-05-03 (providing justification for using force on another person in self-defense); N.D.C.C. § 12.1-05-02(1) ("Conduct engaged in by a public servant in the course of the person's official duties is justified when it is required or authorized by law."); and N.D.C.C. § 12.1-05-07(2)(a),(b) (providing deadly force is justified when "it is expressly authorized by law" or "used in lawful self-defense . . . if such force is necessary to protect the actor or anyone else against death, serious bodily injury, or the commission of a felony involving violence").

[¶11] Potts argues his actions in subduing the suspect were taken as a public servant in the course of his official duties and were taken in lawful self-defense. He contends he should not lose his job for doing his job. Potts further argues the exception to at-will employment for obeying a subpoena, *Ressler*, 480 N.W.2d 429, applies with equal force to a determination for compliance with a statutory duty, particularly when the use of force was reasonable and justified. He contends the *Ray,* 359 P.3d 614, and *Feliciano*, 559 S.E.2d 713, cases support recognizing a public policy exception, and cases from other jurisdictions are factually distinct.

[¶12] In its amicus curiae brief, the North Dakota Fraternal Order of Police ("NDFOP") argues that peace officers should not be forced to forfeit their constitutional right to self-defense on a fear of losing their job and that North Dakota's self-defense law shows clear and compelling public policy for an exception to the at-will employment doctrine. NDFOP contends a policy allowing termination of a police officer for acting in self-defense while making an arrest is inimical to existing public policy, resulting in police officers not defending themselves fearing job loss and offenders resisting to avoid arrest. NDFOP also asserts the public policy concern is more akin to that in *Ressler*, 480 N.W.2d 429, and *Krein*, 415 N.W.2d 793.

[¶13] Devils Lake responds that the district court correctly held there was not a public policy expressed with "sufficient clarity and weight" to support an exception from the employment-at-will doctrine for law enforcement officers

5

acting in self-defense. Devils Lake contends this Court is cautious to recognize public policy exceptions and both *Ressler* and *Krein* are distinguishable because they involved private rather than public employers. Devils Lake argues North Dakota's constitutional, statutory, and administrative provisions do not support recognizing a public policy exception.

[¶14] Devils Lake argues that the *Ray* and *Feliciano* cases are not persuasive, are not binding, and are not the best guidance. Devils Lake asserts a majority of other jurisdictions that have considered the issue have declined to recognize this public policy exception, citing *Hoven v. Walgreen Co.*, 751 F.3d 778 (6th Cir. 2014); *Keshe v. CVS Pharmacy Inc.*, No. 2:14-cv-08418CAS(MANx), 2016 WL 1367702 (C.D. Cal. Apr. 5, 2016), *aff'd sub nom. Keshe v. CVS Pharmacy*, 711 F.App'x 396 (9th Cir. 2017); *Johnson v. CVS Pharmacy, Inc.*, No. C 10-03232 WHA, 2011 WL 4802952 (N.D. Cal. Oct. 11, 2011); *Riba v. Wal-Mart Stores E., L.P.*, No. 3:10cv112/MCR/EMT, 2010 WL 11565622 (N.D. Fla. Aug 26, 2010); *Bruley v. Vill. Green Mgmt. Co.*, 592 F.Supp.2d 1381 (M.D. Fla. 2008), *aff'd sub nom. Bruley v. LBK, LP*, 333 F.App'x 491 (11th Cir. 2009); *Altschuld v. CVS Caremark Corp.*, No. WDQ-13-3680, 2015 WL 794964 (D. Md. Feb. 24, 2015); *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297 (Md. Ct. Spec. App. 1995); *McLaughlin v. Barclays Am. Corp.*, 382 S.E.2d 836 (N.C. 1989), *disapproved of by Amos v. Oakdale Knitting Co.*, 416 S.E.2d 166 (N.C. 1992); *Scott v. Extracorporeal, Inc.*, 545 A.2d 334 (Pa. Super. Ct. 1988).

[¶15] Neither Devils Lake nor Potts argued this Court should limit the holdings in *Ressler* and *Krein* to their facts as suggested by the concurrence, and we decline to do so unassisted by the adversarial process. We have stated on numerous occasions that public policy is declared by the Legislature's action, and that the Legislature is much better suited than the courts to identify or set public policy in this state. *See, e.g.*, *Envtl. Driven Solutions, LLC v. Dunn County*, 2017 ND 45, ¶ 17, 890 N.W.2d 841; *Bartholmay v. Plains Grain & Agronomy, LLC*, 2016 ND 138, ¶ 15, 881 N.W.2d 249; *State v. Vandermeer*, 2014 ND 46, ¶ 19, 843 N.W.2d 686; *In re Mangelsen*, 2014 ND 31, ¶ 19, 843 N.W.2d 8; *Rodenburg v. Fargo-Moorhead Young Men's Christian Ass'n*, 2001 ND 139, ¶ 29, 632 N.W.2d 407. While Potts invites this Court to recognize a public policy exception to at-will employment under N.D.C.C. § 34-

6

03-01 for law enforcement officers acting in self-defense, the district court's thorough analysis concluded such an exception is not sufficiently clear under North Dakota law. We agree.

[¶16] Potts brought this matter to the courts and not the Legislature. Doing so he used the analytical framework in *Ressler* and *Krein* and asked the judiciary to recognize a public policy exception to at-will employment under N.D.C.C. § 34-03-01 for law enforcement officers acting in self-defense. Using that framework, the district court's thorough analysis concluded such an exception is not sufficiently clear under North Dakota law. We agree.

[¶17] While N.D.C.C. § 12.1-05-03, provides for the justification of certain conduct undertaken in self-defense, N.D.C.C. § 12.1-05-01 also makes clear that it is a defense to criminal prosecution. This section further states, "That conduct may be justified or excused within the meaning of this chapter does not abolish or impair any remedy for such conduct which is available in any civil action." N.D.C.C. § 12.1-05-01(3). There also are limitations on what conduct may be justified as self-defense, *see* N.D.C.C. § 12.1-05-03, and the amount of force allowed, *see* N.D.C.C. 12.1-05-07, which are dependent on the circumstances when force is used.

[¶18] Applying our constitutional and statutory self-defense provisions to law enforcement officers acting in the course of official duties depends on the circumstances in each case. Under current law, that fact-dependent application does not supply a clear right for us to recognize an exception to at-will employment. Instead, the Legislature is better equipped to decide whether to recognize any such specific exception to at-will employment under N.D.C.C. § 34-03-01.

[¶19] The district court did not err in holding under North Dakota law no public policy exception to the at-will employment doctrine exists for law enforcement officers who act in self-defense. Therefore, the court did not err in granting summary judgment to Devils Lake.

## IV

[¶20] The judgment is affirmed.

[¶21] Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers

**Tufte, Justice, concurring in the result.**

[¶22] I also conclude the result reached by the district court must be affirmed, but I respectfully disagree with the majority's application of the standard articulated in our cases. I would affirm because I believe we should clearly foreclose this Court's recognition of any additional "public policy exceptions" to N.D.C.C. § 34-03-01.

[¶23] Both Potts and the City of Devils Lake argue within the parameters set out in *Ressler v. Humane Soc.*, 480 N.W.2d 429, 432 (N.D. 1992), and *Krein v. Marian Manor Nursing Home*, 415 N.W.2d 793, 795 (N.D. 1987). Potts argues that the framework established in those cases for recognizing "public policy exceptions" to North Dakota's employment at-will statute should lead this Court to recognize a similar exception precluding dismissal for exercising the right of self-defense. The City responds that the right of self-defense lacks sufficient "clarity and weight" to support an exception like those announced in *Krein* and *Ressler*. The City does not question the continuing vitality of these cases, but the majority, at ¶ 15, nods to their dubious foundation with a long string of citations where this Court has acknowledged that declaration of public policy is vested in the Legislative Assembly. For the reasons below, I believe that the right of self-defense readily satisfies the standard articulated in *Ressler* and *Krein*, and under their rationale would justify a similar public policy exception. But, because a court implicates serious separation of powers concerns when it identifies "public policy exceptions" to unambiguous statutes and because I see no judicially administrable limiting principle to guide us in deciding which public policies merit an exception to at-will employment, I would limit *Ressler* and *Krein* to their facts and make clear that requests for

8

exceptions to statutes are properly directed at the Legislative Assembly and not the courts.

[¶24] "An employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title." N.D.C.C. § 34-03-01. This statute is unambiguous. It remains unchanged from a provision first enacted in the territorial code. Civ. Code § 1152 (rev. 1877).

[¶25] In *Ressler*, this Court forthrightly acknowledged that such "public policy exceptions" operated to round off the rough edges of the law: "Judicially created exceptions to or modifications of the at-will rule have also emerged to ameliorate the sometimes harsh consequences of strict adherence to the at-will rule." *Ressler*, 480 N.W.2d at 431. If the employment at-will rule derived from a common law doctrine, this statement would be unremarkable. But in North Dakota the rule is codified, subject only to exceptions provided in Title 34. N.D.C.C. §§ 34-03-01, 1-01-06. The *Ressler* Court went on to say that a "public policy exception" may be created by the court where the public policy was "clear and compelling" and further requiring that "the 'public policy must be evidenced by a constitutional or statutory provision.'" *Ressler*, at 431-32 (quoting *Lee v. Walstad*, 368 N.W.2d 542, 547 (N.D. 1985)). This Court in *Ressler* recognized a public policy exception prohibiting retaliatory discharge of an employee for honoring a subpoena to testify on behalf of the defendant in a criminal case. *Id.* at 432. The Court found the public policy in criminal statutes punishing making false statements and refusal to obey a subpoena or to testify. *Id.* at 432. *See also* N.D. Const. art. I, § 12 (guaranteeing right to compulsory process).

[¶26] *Ressler* described a somewhat higher threshold than the Court had applied to declare a public policy exception in *Krein*, where the Court cited only N.D.C.C. § 65-01-01, which codifies the Legislative Assembly's intent to provide "sure and certain relief" to injured workers. *Krein*, 415 N.W.2d at 794. We have since applied the *Ressler* standard to reject wrongful termination claims. *Peterson v. N.D. Univ. Sys.*, 2004 ND 82, ¶¶ 25-26, 678 N.W.2d 163 (rejecting state board of higher education policies as insufficient to support

9

public policy exception); *Jose v. Norwest Bank North Dakota, N.A.*, 1999 ND 175, ¶ 21, 599 N.W.2d 293 (holding employees' termination did not contravene policy described in any cited constitutional or statutory provisions). None of these cases reasoned that N.D.C.C. § 34-03-01 had to be interpreted to reconcile it with a conflicting statement of public policy enacted in a different statute.

[¶27] Against this standard Potts asks us to consider whether North Dakota public policy supporting the right of self-defense, and in particular the exercise of self-defense by an on-duty law enforcement officer, is sufficiently "clear and compelling," *Ressler*, 480 N.W.2d at 432, or has (in the words the district court quoted from *Ray v. Wal-Mart Stores, Inc.*, 2015 UT 83, ¶ 2, 359 P.3d 614) the "clarity and weight" to support a public policy exception. If it were appropriate for us to recognize public policy exceptions, I would conclude self-defense meets this standard. Although the rationale in *Ray* is persuasive, Utah retains a common-law presumption of at-will employment rather than a codified rule, so the Utah Supreme Court, in developing the common law of Utah, has more latitude to develop the nuances of this common law tort. *See Retherford v. AT&T Commc'ns*, 844 P.2d 949, 958 (Utah 1992).

[¶28] The right of self-defense is well established in North Dakota law. In 1889, the people of North Dakota began the first section of the first article of the state constitution: "All individuals are by nature equally free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty; . . . ." N.D. Const. art. I, § 1. That provision was amended in 1984 to expand on the point, making clear that this inalienable right of individuals includes the right "to keep and bear arms for the defense of their person." 1985 N.D. Sess. Laws ch. 702. These clear, perhaps even majestic, statements certainly compare favorably to the mushy statement of legislative purpose in N.D.C.C. § 65-01-01 that the court relied on in *Krein*.

[¶29] The state's public policy supporting the right of self-defense also appears in statute as an affirmative defense to a criminal charge. N.D.C.C. § 12.1-05-03. The majority, at ¶ 16, notes that "it is a defense to criminal prosecution," leaving undisturbed any civil remedies that may be available. In *Ressler* the

Court also relied on criminal statutes punishing refusal to obey a subpoena or to testify as support for a public policy exception to at-will employment. *Ressler*, 480 N.W.2d at 432. And criminal laws do not ordinarily operate to limit civil statutes otherwise applicable to the same acts. *See, e.g., State ex rel. Burgum v. Hooker*, 87 N.W.2d 337, 343 (N.D. 1957). The state's longstanding declared public policy is the same in the civil realm: "Any necessary force may be used to protect from wrongful injury the person or property of one's self, or of a wife, husband, child, parent, or other relative, or member of one's family, or of a ward, servant, master, or guest." N.D.C.C. § 14-02-07 (originally enacted in 1889 from the territorial code, Civ. Code § 33 (rev. 1877)). *See also* N.D.C.C. § 12.1-05-07.2 (providing civil immunity for use of force in self-defense).

[¶30] Any recognition of public policy exceptions by this Court should be on a neutral basis. I am unable to discern a neutral limiting principle that would require an exception to at-will employment for injured worker claims under a broad, general statutory statement of purpose such as N.D.C.C. § 65-01-01 but deny such an exception for exercise of an inalienable right supported by longstanding public policy such as self-defense. Any principle that includes both may also include other individual rights described in N.D. Const. art. I, in addition to countless public policies enacted in statute. A principle that recognizes some of these but not others encroaches on the proper role of the Legislative Assembly in weighing and declaring public policy. In my view, only a principle that declines all invitations to create public policy exceptions is faithful to the judicial role.

[¶31] In drafting a statute, the Legislative Assembly may sometimes fail to anticipate an exceptional circumstance it would have accommodated in its drafting if the circumstance had been considered. When such a situation arises, this Court should not become a partner in legislative drafting by reading an implied exception into a clear statute. Neither judges nor legislators have perfect foresight. Sometimes an unanticipated and arguably unfair application of a generally applicable law will arise. That application of the law, unfair though it may seem to be, does not give rise to a judicial power to craft statutory exceptions. Instead, it illustrates the power of the rule of law. We are all governed by written laws providing advance notice of our rights and

obligations. If a particular application is unintended by the Legislative Assembly, it is free to amend the statute at its next opportunity. Any harm in applying a law to the person who first encounters that application does not stand in isolation. It must be considered in the context of the rule of law benefits of neutral, prospective application of written laws. If in retrospect an application of a criminal law is undesired, the executive branch has both prosecutorial discretion and the pardon power to provide relief in exceptional circumstances. When the Legislative Assembly declares public policy in statute, it deprives the courts of the flexible common law approach to incrementally develop rules and exceptions as each case arises. N.D.C.C. § 1-01-06 ("In this state there is no common law in any case in which the law is declared by the code.").

[¶32] Jerod E. Tufte

      Jon J. Jensen, C.J.